COMMONWEALTH vs. GENE F. KELLEY.

Essex. December 6, 1988. — April 3, 1989.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Motor Vehicle*, Operating under the influence. *Hearing-Impaired Person.*
*Evidence*, Intoxication, Right to obtain evidence. *Words*, "Shall."

A criminal defendant who was hearing-impaired, who had been arrested
and held for operating a motor vehicle while under the influence of
intoxicating liquor but who had not been provided with an interpreter
as required by G. L. c. 221, § 92A, was not entitled to dismissal of the
charge by reason of allegedly inadequate notice of his right to use a
telephone as guaranteed by G. L. c. 276, § 33A. [462-463]

A complaint for operating a motor vehicle while under the influence of
alcohol brought against a defendant who was hearing-impaired was re-
manded for a further evidentiary hearing and for findings in accordance
with the holding in *Commonwealth* v. *Andrade*, 389 Mass. 874 (1983),
to determine the appropriate remedy for a violation of the defendant's
right under G. L. c. 221, § 92A, to an interpreter after his arrest, which
resulted in allegedly inadequate notice to him of his right to an independ-
ent examination by a physician under G. L. c. 263, § 5A. [463-464]

A criminal defendant who was hearing-impaired, who had been arrested
and held for operating a motor vehicle while under the influence of
intoxicating liquor but who had not been provided with an interpreter
as required by G. L. c. 221, § 92A, did not demonstrate such prejudice
as would warrant dismissal of the complaint on Federal or State constitu-
tional grounds. [464]

Where police did not give a breathalyzer test to a criminal defendant arrested
for operating a motor vehicle while under the influence of alcohol, the
defendant was not entitled to notice that he was entitled to an independent
test. [465]

COMPLAINT received and sworn to in the Lynn Division of
the District Court Department on February 17, 1987.

The case was heard by *Joseph I. Dever*, J., on a motion to
dismiss.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Elin H. Graydon*, Assistant District Attorney (*Randy S. Chapman*, Assistant District Attorney, with her) for the Commonwealth.

*Steven S. Greenzang* for the defendant.

*Elizabeth R. OuYang & Matthew Engel,* for Disability Law Center, Inc., amicus curiae, submitted a brief.

O'CONNOR, J. The defendant, who is hearing-impaired, was charged with operating a motor vehicle while under the influence of intoxicating liquor in violation of G. L. c. 90, § 24 (1986 ed.). He moved to dismiss this and two related charges on the ground that he was denied his statutory right to the assistance of an interpreter in violation of G. L. c. 221, § 92A (1986 ed.), with the result, he asserted, that he was not adequately informed of his right under G. L. c. 276, § 33A (1986 ed.), to use a telephone, and of his right under G. L. c. 263, § 5A (1986 ed.), to be examined by a physician. After an evidentiary hearing, a judge in the District Court granted the defendant's motion to dismiss the operating under the influence charge, and otherwise denied the defendant's motion. The Commonwealth appealed, and we transferred the appeal to this court on our own motion. We are concerned only with the charge of operating a motor vehicle while under the influence of intoxicating liquor. We reverse and remand for a further hearing and for findings.

The judge did not make written findings. We summarize the testimony at the hearing on the motion to dismiss. The defendant was arrested by Saugus police at approximately 2 or 2:30 A.M., February 14, 1987, and was taken to the police station, arriving there between 2:30 and 2:45 A.M. According to the police officers' testimony, the defendant had been taken to the booking desk and the booking procedure started, when he became violent and verbally abusive. The defendant swore at, threatened, and pushed the officers and pounded his fists on the booking desk. The officers showed the defendant notes which said, "Can you sign? Would you like us to call anybody to sign for you?" and "Is there anybody we can call? Can you

read?" The defendant looked at those notes, nodded his head affirmatively, but resumed his abusive and violent behavior. At times he was so violent that it took three police officers to subdue him. An officer also attempted to show the defendant the booking sheet which set out the rights of an arrestee. At one point, when the defendant seemed to have regained his composure, one of the officers led him to a wall poster which enumerated, in inch-high letters, an arrestee's rights including those with respect to an examination by a physician, use of the telephone, and breathalyzer testing. The defendant again became violent, whereupon the police subdued him and placed him in a cell.

The desk officer on duty when the defendant was brought into the station testified that he called the Lynn police, Lynn Hospital, Danvers police, the Hogan Center in Danvers, Massachusetts Communications for the Deaf, the State police, an agency with the acronym D.E.F., and Beverly Hospital in a fruitless effort to obtain an interpreter for the defendant. None of these had an interpreter available before 9 A.M.

The defendant's testimony varied sharply from that of the police officers in many respects. According to the defendant, after he was taken to the station, he was booked and placed in a cell. He was not advised of his right to be examined by a physician or of his right to contact an attorney, and was not asked if he wished to submit to a breathalyzer test. He was not shown any writings with respect to his rights. "[A]round 5:00 in the morning," the defendant was asked if he wanted to use the telephone. He gave the police his girl friend's telephone number. She testified that she received a telephone call from the police at a little after 8:30 A.M.

After hearing this testimony, the judge granted the defendant's motion to dismiss, without making any written findings or rulings. During oral argument on the motion, the judge stated that, under G. L. c. 221, § 92A, "[t]here is one means of notifying a deaf person or a hearing impaired person of his or her rights . . . and that is through an interpreter that was 'procured and arranged for in terms of payment, by the arresting officer.'" He ruled that, where an arrestee is deaf or hearing-

impaired, c. 221, § 92A, creates an exception to the usual rule that notice of a defendant's right to use the telephone under c. 276, § 33A, and right to an independent physical examination under c. 263, § 5A, may be given in writing. The judge dismissed the charge on the ground, expressed orally, that the defendant was not provided with an interpreter to notify him of these rights.

General Laws c. 221, § 92A, provides in part as follows: "Whenever a deaf or hearing-impaired person is arrested for an alleged violation of a criminal law, including a local ordinance, the arresting officer shall procure and arrange payment for a qualified interpreter to assist such person regarding any interrogation, warning, notification of rights, or taking of a statement. No answer, statement, or admission, written or oral, made by a deaf or hearing-impaired person in response to any question by a law enforcement officer or any prosecutor, in his official capacity, in any criminal proceeding may be used against such deaf or hearing-impaired person unless such statement was made or elicited through a qualified interpreter and was made knowingly, voluntarily or intelligently . . . ."

"In construing a statute, words are to be accorded their ordinary meaning and approved usage. . . . The word 'shall' is ordinarily interpreted as having a mandatory or imperative obligation. . . . In addition, a general rule exists that directions to public officers for the protection of rights are mandatory." (Citations omitted.) *Hashimi* v. *Kalil,* 388 Mass. 607, 609-610 (1983). Thus, the defendant was entitled to an interpreter. Despite the diligent and good faith efforts of the Saugus police as demonstrated by the uncontradicted evidence, however, no interpreter was provided in timely fashion to the defendant. Therefore, as the judge concluded, the defendant's statutory right to an interpreter was not satisfied. The Commonwealth does not contend otherwise.

The matter in contention is not whether the defendant's right to an interpreter was violated, but rather what is that violation's consequence in this case. The Commonwealth argues that, because c. 221, § 92A, expressly provides a sanction for the violation, namely the suppression of statements made by the

hearing-impaired defendant before an interpreter has been provided, and provides no other sanction, the implication is that suppression is the only remedy. However, the defendant asserts, and we agree, that, for a remedy to be appropriate, it must be adequate to cure any prejudice to the defendant that may result from the denial of his rights, see *Commonwealth v. King*, 400 Mass. 283, 291-292 (1987); *Commonwealth v. Hine*, 393 Mass. 564, 573 (1984), and mere suppression of statements does not remedy a deprivation of adequate notice to the defendant of a right to be examined by a physician of his choice. The defendant asserts that the only adequate remedy in this case is dismissal of the charge as ordered by the judge. We agree with the defendant that the public's "substantial interest in prosecuting those accused of crime and bringing the guilty to justice," *Commonwealth v. King, supra* at 290, may indeed be overborne by the necessity that the defendant not be deprived by the Commonwealth of a potential defense, but whether such deprivation occurred in this case depends on facts not yet established.

Even if we assume that, without the assistance of an interpreter, the defendant was not adequately notified of his right to use a telephone as guaranteed by G. L. c. 276, § 33A, that particular failure of notice will not support the dismissal of the driving while under the influence charge. The remedy for a violation of c. 276, § 33A, is the suppression of unfavorable evidence obtained as a result of denying the defendant's right. *Commonwealth v. Jones*, 362 Mass. 497, 502 (1972), citing *Commonwealth v. Bouchard*, 347 Mass. 418, 419-421 (1964). However, determining the appropriate remedy for a violation of a defendant's right to a physician's examination under G. L. c. 263, § 5A, is more complicated.

The controlling case is *Commonwealth v. Andrade*, 389 Mass. 874 (1983). In *Andrade*, we considered the dismissal of a complaint for driving while under the influence of intoxicating liquor where the defendant was not informed of his right to an independent physician's examination as required by c. 263, § 5A. We reasoned that dismissal may be required where a timely examination and chemical test of blood alcohol

content by a physician might have provided the defendant with exculpatory evidence. However, we concluded that "[d]ismissal of a complaint may not be an appropriate or necessary remedy in all cases. . . . Rather, each case must be considered on its own set of facts and a remedy adequate to cure potential or actual prejudice resulting from a violation of G. L. c. 263, § 5A, should be allowed." *Id.* at 878. In determining whether dismissal was the proper remedy, we took note of the absence of police effort to inform the defendant of his right to an examination (the defendant's command of the English language was "marginal at best"); the absence of exigent circumstances "which might have justified the police officers' failure to communicate the defendant's right to him"; the absence of "evidence that the defendant was so inebriated that an attempt at compliance with § 5A would have been futile"; and the absence of evidence that the defendant was so belligerent or otherwise unwilling to cooperate as to justify the failure to comply with the statute. *Id.* at 879. We remanded the case for a possible further hearing and for findings relative to prejudice. In addition, we pointed out that the record did not show overwhelming evidence of the defendant's guilt, apart from police testimony, such as a videotape. *Id.* at 882. It is clear from *Andrade* that whether violation of a defendant's right to adequate notice of his right to an independent physician's examination requires dismissal of the charge against him depends on considerations of fairness, including possible prejudice to him flowing from the violation. The circumstances are critical. Therefore, we remand this case for a further evidentiary hearing and for findings in accordance with the several factors discussed in *Commonwealth* v. *Andrade*.

In light of our disposition of this case, we need not address at length the defendant's contention that the Commonwealth's failure adequately to notify him of his rights violated not only his statutory, but also his Federal and State constitutional rights. Even if those rights were violated in this case, "dismissal of the complaint would be an appropriate remedy only in the event that prejudice to the defendant cannot be negated." *Andrade*, *supra* at 882 n.4, citing *United States* v. *Morrison*, 449 U.S. 361, 364-367 (1981).

We deal with one final contention made by the defendant. The defendant contends that the absence of an interpreter resulted in his being deprived of an opportunity to take a breathalyzer test. In *Commonwealth* v. *Alano*, 388 Mass. 871 (1983), we made clear that G. L. c. 90, § 24, does not establish a right to a police administered breathalyzer test. Rather, if the police do administer such a test, G. L. c. 90, § 24 (1) (*e*), imposes requirements to be met in order to make the test results admissible. One of those requirements is that the defendant be afforded a reasonable opportunity to have an independent test performed. *Id.* at 878. Since the record does not show that the police gave the defendant a breathalyzer test, no right to an independent test came into being. It follows that the defendant was not entitled to notice that he was entitled to an independent test.

The order allowing the defendant's motion to dismiss is reversed, and this case is remanded for further proceedings consistent with this opinion.

*So ordered.*