COMMONWEALTH *vs.* FREDERICK H. HAMPE.

Middlesex. November 8, 1994. - February 17, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Bail. Motor Vehicle,* Operating under the influence. *Alcoholic Liquors,* Motor vehicle. *Arrest. Constitutional Law,* Arrest. *Evidence,* Right to obtain evidence, Intoxication, Blood alcohol test, Breathalyzer test. *Practice, Criminal,* Dismissal.

This court concluded that, in order to effectuate the provisions of G. L. c. 263, § 5A, which confers on a defendant the right to an independent blood or breath test when he is charged with operating a motor vehicle while under the influence of alcohol, police officers are required to telephone a bail commissioner or other authorized person (or allow the defendant to do so), in circumstances when courts are not in session, to facilitate the defendant's release in a timely fashion pursuant to G. L. c. 276, §§ 42, 57, 58; and the police should advise the defendant of this right at the time of booking. [517-521]

The judge at the trial of a complaint for operating a motor vehicle while under the influence of alcohol correctly concluded that police officers obstructed the defendant's release on bail after his arrest, and thus violated the defendant's right under G. L. c. 263, § 5A, to obtain an independent blood or breath test with respect to his alleged intoxication. [521-522] O'CONNOR, J., dissenting.

This court discussed the remedies (dismissal of the complaint or suppression of certain evidence) for police officers' obstructing the release on bail of a defendant arrested for operating a motor vehicle while under the influence of alcohol that violates the defendant's right under G. L. c. 263, § 5A, to obtain an independent blood or breath test. [522-524] O'CONNOR, J., dissenting.

Where a District Court judge dismissed a complaint for operating a motor vehicle while under the influence of alcohol for police officers' violation of the defendant's right under G. L. c. 263, § 5A, but where the record did not indicate what evidence the judge considered in reaching his conclusion, the matter was remanded for further consideration in light of this court's discussion of the appropriate remedies in the circumstances of such a case. [524]

COMPLAINTS received and sworn to in the Waltham Division of the District Court Department on February 14, 1992.

On transfer to the jury session of the Cambridge Division, questions of law were reported to the Appeals Court by *Jonathan Brant*, J. The Supreme Judicial Court transferred the case on its own initiative.

*Lincoln S. Jalelian*, Assistant District Attorney (*Sabita Singh*, Assistant District Attorney, with him) for the Commonwealth.

*Peter W. Gubellini* for the defendant.

LIACOS, C.J. A judge of the District Court sitting in the jury-of-six session reported the following two questions to the Appeals Court pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979): "(1) Whether it is a violation of statutory or [c]onstitutional rights for an individual who is arrested . . . for operating under the influence of alcohol when courts are not in session to be denied access to a bail commissioner and held over night; and (2) [i]f so, is the proper remedy dismissal of the charge?"[1] We transferred the case here on our own motion. Our responses to these questions are: Question 1, "Yes, it is a violation of statutory rights"; Question 2, "Not necessarily."

---

[1]In his "Decision Re Motion to Dismiss or Suppress," the District Court judge ordered dismissal of the driving under the influence complaint. Technically, a dismissed case cannot be reported pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979), since the rule allows for reporting a case either prior to trial or after conviction of the defendant, with his consent for the report. A dismissed case fits into neither category. It would have been more appropriate for the judge to report the questions without deciding the motion to dismiss. See, e.g., *Commonwealth* v. *Catalina*, 407 Mass. 779, 780 (1990) (case reported without decision after motion to dismiss filed); *Commonwealth* v. *Andrade*, 389 Mass. 874, 875 (1983) (same).

However, neither party has argued here or below that the case should not have been reported. We note that the Commonwealth would have had a right to appeal from the judge's dismissal of the complaint. Mass. R. Crim. P. 15, 378 Mass. 884 (1979), and both parties have thoroughly briefed all the relevant issues. In these circumstances, we believe that "efficiency in the administration of justice would be best served by our answering the reported question[s] regardless of whether, as a technical matter, [they are] properly before us." *Matter of a John Doe Grand Jury Investigation*, 408 Mass. 480, 481 (1990).

We summarize the relevant facts found, after hearing, by the District Court judge. At approximately 2:30 A.M. on February 14, 1992, Officer Mark Alonzi of the Weston police, in response to a radio broadcast regarding a possible larceny in the area, stopped an automobile being operated by the defendant. Just prior to hearing this broadcast, Alonzi observed the defendant's vehicle to be proceeding without its headlights illuminated. During the course of questioning the defendant, Alonzi noticed that the defendant's eyes were red and bloodshot, that his speech was slurred, and that there was an odor of alcohol on his breath. The defendant consented to performing three field sobriety tests, all of which, in Alonzi's opinion, the defendant failed.

Officer Alonzi placed the defendant under arrest and brought him to the Weston police station. During the ride to the police station, the defendant was belligerent, sarcastic, and offensive toward the officer. The judge found, based on the testimony of Alonzi and another police officer, that this behavior of the defendant was not unusual for an individual arrested for operating under the influence of intoxicating liquor.

At the police station, Officer Francis Hines, the officer in charge of the shift, informed the defendant of his Miranda rights; his right to use the telephone, G. L. c. 276, § 33A (1992 ed.); his right to take a breathalyzer test, G. L. c. 90, § 24 (1) (e) (1992 ed.); and his right to obtain an independent blood test, G. L. c. 263, § 5A (1992 ed.). The defendant consented to a breathalyzer test. That test was administered twice and the results were 0.11 and 0.12 per cent, respectively.

The defendant expressed a desire to obtain an independent blood test pursuant to G. L. c. 263, § 5A, and an interest in being released as quickly as possible.[2] The defendant was

[2]The findings of the judge are as follows: "At the Weston police station, Officer Francis Heins gave Mr. Hampe his *Miranda* rights, informed him of his right to take a breathalyzer test, his right to use a telephone, and his right to obtain an independent blood or breath test. See G. L. c. 263, § 5A. Mr. Hampe accepted the offer to take a breath test. The results of

given a telephone and a telephone book and was observed to be looking up hospital telephone numbers. It is unclear whether the defendant made any telephone calls at that time.

Despite the defendant's request to be released on bail, none of the Weston police officers called a bail commissioner, nor does it appear that the defendant was allowed to make such a call. Officer Hines decided that the defendant was not in a condition to be released and needed to "sleep it off." The defendant was placed in a holding cell where he fell asleep. At approximately 8:30 A.M., he was brought to the Waltham District Court for arraignment. He was then released by the court. Later that day, the defendant underwent an independent blood test, but by that time any alcohol in his system would have been metabolized.

1. *Access to bail commissioner.* The District Court judge determined that the defendant's statutory and constitutional rights to have his bail considered were violated, relying on G. L. c. 276, §§ 42 and 58, the Eighth Amendment to the United States Constitution, and art. 26 of the Declaration of Rights of the Massachusetts Constitution.

---

the breath test were readings of .11 and .12, slightly above the standard for presumption of impairment. See G. L. c. 90, § 24 (1) (e). Although Mr. Hampe expressed interest in obtaining an independent breath or blood test, as permitted by G. L. c. 253, § 5A, and an interest in being bailed out of jail quickly, the officers at the Weston police station did not release Mr. Hampe or call a bail commissioner. Officer Heins, the person in charge of the station, gave Mr. Hampe a telephone book and a telephone so that he could call Waltham-Weston Hospital to arrange for a blood test. However, Officer Heins determined to hold Mr. Hampe at the station because [the officer] believed that Mr. Hampe needed to sleep off the effects of the alcohol he had consumed.[] The officers believed that Mr. Hampe should remain in the station holding cell until morning. Officer Heins did not call a bail commissioner, and Mr. Hampe was not released during the night. Instead, he was transported to Waltham District Court the following morning for arraignment.

"The next afternoon, after arraignment, Mr. Hampe obtained an independent blood test, but the alcohol had left his system.

"Although Mr. Hampe had more than $50.00 in his pocket and thus could have paid the bail fee for his release, he was kept in jail until 8:30 A.M. the next morning when he was taken to Court."

For the purposes of this case, we need not explore the extent of a constitutional right to be considered for bail under the Eighth Amendment, or art. 26, the provisions on which the judge below based, in part, his decision. To reach our conclusion in affirmative response to the first reported question, we need only consider the statutory scheme which provides an arrested party the statutory right to prompt release on bail, see G. L. c. 276, §§ 42, 57, 58,[3] and his statutory right to an independent blood test under G. L. c. 263, § 5A. In doing so, we are mindful of our duty to consider these statutes as part of a statutory scheme which we ought harmonize so as to give full effect to the expressed intent of the Legislature. See *Commonwealth* v. *Lightfoot*, 391 Mass. 718, 720 (1984); *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513-514 (1975). These statutory rights, considered together, lead us to conclude that, in order for G. L. c. 263, § 5A, to have its intended force and effect,[4] it must be read as requiring the police to telephone a bail commissioner or to allow the defendant to do so in circumstances such as those present here.

---

[3]A person under arrest has a right to a hearing on admission to bail with a presumption of release on personal recognizance. G. L. c. 276, §§ 42, 57, 58 (1992 ed.). *Jenkins* v. *Chief Justice of the Dist. Court Dep't*, 416 Mass. 221, 239-240 (1993). A bail commissioner is charged with the responsibility of responding with all reasonable promptness, after regular court hours, to admit arrested persons to bail. *Quinn* v. *State Ethics Comm'n*, 401 Mass. 210, 212-213 (1987). Only a properly designated person (not a police officer) is authorized to take bail. G. L. c. 276, § 57. Rule 1(A) of the Superior Court Rules Governing Persons Authorized to Take Bail (1991).

[4]General Laws c. 263, § 5A (1992 ed.), provides: "A person held in custody at a police station or other place of detention, charged with operating a motor vehicle while under the influence of intoxicating liquor, shall have the right, at his request and at his expense, to be examined immediately by a physician selected by him. The police official in charge of such station or place of detention, or his designee, shall inform him of such right immediately upon being booked, and shall afford him a reasonable opportunity to exercise it. Such person shall, immediately upon being booked, be given a copy of this section unless such a copy is posted in the police station or other place of detention in a conspicuous place to which such person has access."

General Laws c. 276, § 58 (1992 ed.), provides, in relevant part, that "a bail commissioner . . . *shall,* when a prisoner is held under arrest or committed either with or without a warrant for an offense . . . *hold a hearing* in which the defendant and his counsel, if any, may participate and inquire into the case and *shall admit such person to bail* on his personal recognizance without surety unless said . . . bail commissioner . . . determines, in the exercise of his discretion . . . that such a release will not reasonably assure the appearance of the prisoner before the court" (emphasis supplied). Rule 14 of the Superior Court Rules Governing Persons Authorized to Take Bail (1991) provides, in relevant part, that "all persons authorized to take bail are entitled to participate fairly in the out-of-court bailing activity in their jurisdiction *so long as they are willing and able to respond with all reasonable promptness* to calls for their services" (emphasis supplied).

As the above quoted paragraph of G. L. c. 276, § 58, demonstrates, an arrestee must be released on bail without surety unless there is a risk that he will not appear in court. To assist in this process, individuals are appointed as bail commissioners, and those individuals are permitted to participate in bail activity as long as they are ready, willing and able to do so with all promptness. Part of the responsibility of a bail commissioner is, as rule 14 provides, "to respond with all reasonable promptness to calls for their services." This requirement is clearly within the knowledge of police officers.

General Laws c. 263, § 5A, confers on a defendant the right to a reasonable opportunity to obtain his own evidence regarding his alleged intoxication. *Commonwealth* v. *Andrade,* 389 Mass. 874, 881 (1983). *Commonwealth* v. *Marley,* 396 Mass. 433, 443 (1985) (Liacos, J., concurring).[5]

---

[5]General Laws c. 263, § 5A, which confers on a defendant the right to an opportunity to obtain an independent test, should be distinguished from G. L. c. 90, § 24 (1) (*e*). This latter statute governs the admissibility of police-administered blood or breath tests and provides that if such test is administered, the results of the test will be admissible at trial only if the

This evidence, obtained through an independent blood or breath test, is extremely fleeting and thus time is of the essence in obtaining the requisite testing. *Andrade, supra.* See G. L. c. 263, § 5A (statute confers right to be examined immediately and defendant must be informed of this right immediately). However, the "statute places primary responsibility for an independent blood test in the hands of the defendant, not the police." *Commonwealth* v. *Lindner,* 395 Mass. 144, 148 (1985).

It is true that the police have no obligation to assist the defendant in obtaining a medical examination. *Commonwealth* v. *Ames,* 410 Mass. 603, 608 (1991). *Commonwealth* v. *Rosewarne,* 410 Mass. 53, 55 (1991). *Commonwealth* v. *Alano,* 388 Mass. 871, 879 (1983). Nevertheless, the police may not prevent or hinder the defendant's reasonable and timely attempt to obtain such an examination. *Rosewarne, supra* at 55. *Alano, supra* at 879. Furthermore, the "reasonable opportunity" which the statute compels the police to afford to a defendant will depend on the particular circumstances of the case. *Alano, supra* at 879-880.

In *Rosewarne,* the defendant telephoned a local hospital from a State police barracks to arrange for a blood test. *Id.* at 54. The hospital employees would not go to the barracks to administer the test and the police would not transport the defendant to the hospital. The defendant's girl friend then telephoned the barracks to arrange the defendant's release on bail. She was informed that it would not be possible. *Id.* Although it was unclear in *Rosewarne* whether the judge dismissed the complaint because of the police refusal to transport the defendant or because of their refusal to arrange bail, we noted that "[i]f the police did in fact obstruct the defendant's attempts to get released on bail, his c. [263], § 5A, rights were violated." *Rosewarne, supra* at 55.

The Legislature has expressed clearly its concern that the right of a defendant to an independent examination under

defendant was offered the opportunity to obtain another, independent test. *Commonwealth* v. *Alano,* 388 Mass. 871, 874-875 (1983).

this section be protected. *Andrade, supra* at 878. While the police do not have to help the defendant by transporting him to a hospital, it remains true that, absent exigent circumstances, the police should telephone a bail commissioner or other authorized person, when courts are not in session, to facilitate a defendant's release in a timely fashion, or at least to allow him to make his own arrangements for a hearing on bail. The police should advise the defendant of this right at the time of booking. For us to require anything less would repeal this statute, in effect.

In determining whether the police obstructed the defendant's release on bail, thus resulting in a violation of his right, we need not concern ourselves with the frame of mind or the good faith of the police. See *Marley, supra* at 444 (Liacos, J., concurring). Instead the question whether there was misconduct by the police appropriately is considered in determining the remedy for a violation of G. L. c. 263, § 5A. *Rosewarne, supra* at 57. *Commonwealth* v. *Kelley*, 404 Mass. 459, 464 (1989).

In this case the judge found correctly that the police obstructed the defendant's release on bail. The record reflects that Officer Hines made a deliberate choice to keep the defendant in custody and not to telephone the bail commissioner. As justification, the Commonwealth contends that Officer Hines properly was holding the defendant in protective custody. This contention is without merit.[6]

General Laws c. 111B, § 8 (1992 ed.), governs the placement of incapacitated persons in protective custody. This statute dictates several steps which the police must follow to place someone in custody, including notification of a treatment facility and entry on an appropriate form that the per-

---

[6]It must be noted that nothing we say here requires police to allow a defendant in circumstances of apparent intoxication to resume the operation of his or her motor vehicle. The release of the defendant when other means of transportation, such as the assistance of a friend who will operate the defendant's vehicle or his own, or of public transportation (should it be available) may be appropriate. Obviously, the police have no duty to transport a defendant.

son is being so held. None of the requirements of § 8 was met in this case. General Laws c. 111B, § 8, states: "A person . . . held in protective custody . . . pursuant to . . . this section, shall not be considered to have been arrested or to have been charged with any crime." The Commonwealth's reliance on *Commonwealth* v. *O'Connor*, 406 Mass. 112 (1989), for a contrary proposition, is unpersuasive.[7]

Based on the requirements of G. L. c. 263, § 5A, we conclude that the police obstructed the defendant's release on bail and therefore violated his right under that section. We next turn to the question of the appropriate remedy.

2. *Remedy for violation of G. L. c. 263, § 5A.* In determining the appropriate remedy for a violation of G. L. c. 263, § 5A, we consider the conduct of the police, the exigent circumstances of the particular case, and other admissible evidence of the defendant's guilt. *Rosewarne, supra* at 57. *Kelley, supra* at 464. Dismissal may be deemed appropriate where there is deliberate or intentional misconduct by the police. *Commonwealth* v. *Manning*, 373 Mass. 438, 443 (1977). In cases arising under c. 263, § 5A, we must consider the purpose of the statute, namely, to give the defendant a reasonable opportunity to obtain his own evidence, available only for a short period of time, regarding his alleged intoxication. *Commonwealth* v. *Marley*, 396 Mass. 433, 443 (1985) (Liacos, J., concurring). *Commonwealth* v. *Andrade*, 389 Mass. 874, 881 (1983). Thus, the remedy must be "adequate to cure potential or actual prejudice resulting from a violation of G. L. c. 263, § 5A," given the

---

[7]At the hearing on the defendant's motion, the police officers who testified seemed to suggest that they had some sort of discretionary authority, apart from G. L. c. 111B, § 8, to hold the defendant in what amounts to protective custody. The Commonwealth did not pursue this baseless argument on appeal. In *Commonwealth* v. *O'Connor*, 406 Mass. 112, 115 (1989), the defendant was found incapacitated, whereas here there was no such finding. Additionally, in *O'Connor, supra* at 120 n.7, unlike here, the defendant was not first placed under arrest. See *Commonwealth* v. *Tomeo*, 400 Mass. 23, 26 (1987) (where defendant first taken into protective custody and, later arrested, "[o]nce the defendant was arrested . . . the protective custody statute [c. 111B, § 8] became irrelevant").

particular facts of the case. *Andrade, supra* at 878-879, 881-882.

In *Andrade*, we said that dismissal was not appropriate in a case where no breathalyzer test was administered if there was overwhelming evidence of guilt apart from the testimony of the police officers. *Id.* at 882. We see no reason for a different rule in a case where a breathalyzer test was performed. Thus, if there is overwhelming evidence of guilt apart from the breathalyzer test and police testimony as discussed below, dismissal may be inappropriate.

We believe that, ordinarily, the appropriate remedy in a case where dismissal is not required is the suppression of the breathalyzer result, if such test was performed, and of certain other police testimony. The determination of what evidence should be suppressed to eliminate prejudice to the defendant is, in the first instance, a matter for the judge's sound discretion. He may, but is not required to, rule that all police testimony be suppressed. This is so because some police testimony may be based on observations made and opinions formed before the violation of the defendant's right under G. L. c. 263, § 5A, occurred. This evidence might include observations made and opinions formed at the scene when the defendant was placed under arrest, such as in this case, the arresting officer's observations of the defendant's behavior and the officer's opinion regarding the defendant's performance of field sobriety tests.

When the defendant is "in custody at a police station or other place of detention charged with operating a motor vehicle while under the influence," his right under G. L. c. 263, § 5A, attaches pursuant to the statutory language at the time he is booked. "The police official . . . shall inform him of such right immediately upon being booked . . . ." G. L. c. 263, § 5A. See note 4, *supra.* Thus, observations made or opinions formed by police officers after that right is violated, either by failure to inform the defendant of the right or by failure to afford a reasonable opportunity to exercise the right (for example, failing to call the bail commissioner or

informing the defendant that he may do so), should be suppressed.

We believe that the suppression of the breathalyzer results and of police testimony regarding events, observations and opinions after the violation of the statutory right, in combination with an appropriate instruction regarding the existence of the statutory right and the violation thereof by the police, will be adequate in most cases, where dismissal is not required, to cure potential or actual prejudice to the defendant.

In this case, the judge concluded that there was not overwhelming evidence of the defendant's guilt. From the judge's written findings and conclusions, we cannot say what evidence he considered in reaching that conclusion. Accordingly, this case must be remanded for rehearing, if necessary, and reconsideration by the judge as to whether there is sufficient evidence of guilt apart from the breathalyzer results and police testimony regarding events, observations and opinions after the violation of the right protected by G. L. c. 263, § 5A.

In summary, we answer the first question, "Yes, it is a violation of statutory rights"; and the second question, "Not necessarily."

O'CONNOR, J. (dissenting in part). The first reported question, "Whether it is a violation of statutory or [c]onstitutional rights for an individual who is arrested . . . for operating under the influence of alcohol when courts are not in session to be denied access to a bail commissioner and held over night," construed literally, surely requires the court's answer — "Yes." See G. L. c. 276, §§ 42, 57, 58 (1992 ed.); *Jenkins* v. *Chief Justice of the Dist. Court Dep't*, 416 Mass. 221, 239-240 (1993); *Quinn* v. *State Ethics Comm'n*, 401 Mass. 210, 212-213 (1987). However, the court devotes much of its opinion to the question whether in this case the judge was correct in concluding that, based on his subsidiary

findings, the police "denied [the defendant] access to a bail commissioner." I agree that the court should focus on that question, but I do not agree that the judge's findings warrant the conclusion that the defendant was denied access to a bail commissioner. Therefore, I do not agree that the defendant's statutory rights were violated or that the complaint was rightly dismissed. If I were to agree that they had been violated, though, I would conclude, differently from the court, that the judge properly dismissed the complaint.

General Laws c. 263, § 5A (1992 ed.), provides in material part: "A person held in custody at a police station or other place of detention, charged with operating a motor vehicle while under the influence of intoxicating liquor, shall have the right, at his request and at his expense, to be examined immediately by a physician selected by him. The police official in charge of such station or place of detention, or his designee, shall inform him of such right immediately upon being booked, and shall afford him a reasonable opportunity to exercise it." I agree with the court that, in aid of the legislative objectives in enacting the relevant statutes, the police must either telephone a bail commissioner or allow the arrested individual to do so, *ante* at 518, 521, and must advise him of his right to make his own arrangements at the time of booking. *Ante* at 521. I would require that the police make a telephone and directory available for that purpose.

I am content that those requirements should be applied to this case. Therefore, if the judge had found on sufficient evidence that the police did not honor those rights, I would join in the court's conclusion that "the police obstructed the defendant's release on bail." *Ante* at 521. However, the judge made no such finding and none would have been warranted. Although the judge found that the police did not call a bail commissioner, the new requirements do not mandate them to do so, and it is of no consequence that Officer Hines's reason for not calling a bail commissioner, which he was not required to do, was that he or the officers thought that the defendant should sleep off the effects of the alcohol he had consumed. The question is not what the officers thought, but

what they did or failed to do in violation of the aforesaid requirements.

The court states, *ante* at 517, that "none of the Weston police officers called a bail commissioner, nor does it appear that the defendant was allowed to make such a call." As I have said, it is of no consequence that none of the officers called a bail commissioner. It also is of no consequence that it does not "appear that the defendant was allowed to make such a call." The important point is that there was no finding, or even evidence, that the defendant was *not* allowed to make such a call or that he was not advised in timely fashion of his right to do so. Therefore, it has not been established that the police did not satisfy the aforesaid requirements or otherwise obstruct the defendant's release on bail. I conclude that the motion to dismiss should have been denied.

In response to the second reported question concerning the appropriate remedy when a defendant charged with operating under the influence has been denied access to a bail commissioner, the court concludes that, in some cases, resulting prejudice may be eliminated by suppression of evidence. *Ante* at 524. I do not agree. In my view, if prejudice has been shown, dismissal is required. Of course, dismissal is inappropriate when prejudice has not been shown, as when there is overwhelming evidence of guilt "*apart from the officers' testimony (as shown on videotape, for example)*" (emphasis added). *Commonwealth* v. *Andrade*, 389 Mass. 874, 882 (1983). In such circumstances, "it could fairly be said that the defendant was not prejudiced by the police officers' violation of G. L. c. 263, § 5A" (emphasis added). *Id.* In that situation, the complaint should not be dismissed, *id.*, and no other corrective measure, such as suppression of evidence, is called for. On the other hand, if prejudice has been shown, it cannot be eliminated by suppression of evidence, leaving the finder of fact to determine the defendant's guilt or innocence without the benefit of a physician's testimony or a blood test result that, but for the unlawful intervention of the police, might have created reasonable doubt in the fact finder's mind. My view is that, if a defendant's right to a bail hear-

ing has been violated, a complaint for driving while under the influence of liquor must be dismissed unless there is clearly no prejudice, see *Andrade, supra* at 882, in which case there is no need for a remedy.